HAMNER *et al. v.* COCKE.

(Division B. Oct. 16, 1939.)

[191 So. 429. No. 33784.]

**R. F. Kimmons,** of Water Valley, for O. T. Hamner, appellant.

**James Stone & Sons**, of Oxford, for Earl Fudge, appellant.

Kermit R. Cofer, of Water Valley, and Flowers, Brown, & Hester, Robert Burns, and F. W. Bradshaw, all of Jackson, for appellee.

Argued orally by **R. F. Kimmons**, for appellant.

**Ethridge, P. J.**, delivered the opinion of the court.

Everett Cocke, receiver for the Peoples Bank of Water Valley, Mississippi, brought suit in the Chancery Court of Yalobusha County against O. T. Hamner and Earl Fudge as individuals, and Ray Sissell as trustee, to reform a settlement made between the receiver of the bank and O. T. Hamner, by which the latter was relieved of certain indebtedness due the bank in his individual

capacity, and as endorser on the notes of others, in consideration of the payment of an additional $740, and foreclosure of the deed of trust involving the securities of the bank upon certain property embraced in the deed of trust. It was found that in the foreclosure mentioned, the lot actually described therein was a different lot from that on which a filling station was located, and which was also embraced in one of the deeds of trust and assigned to the bank as collateral security.

It appears that O. T. Hamner was indebted to the bank prior to the transaction mentioned, on two notes, one for $19.50, the other for $1,554; and that he was also an endorser on a note for another. To secure the amounts mentioned, $19.50 and $1,554, O. T. Hamner gave a deed of trust upon certain lands described by metes and bounds, containing about sixty acres, and in addition to this security, assigned notes and deeds of trust on Earl Fudge to O. T. Hamner, the three notes aggregating a balance due of something in excess of $8,000.

The deeds of trust to O. T. Hamner, of which there are two described lands in one of them as: "That part of Lot No. 276 west of the Illinois Central Railroad, as per the J. W. Mercer map and survey of the city of Water Valley, Mississippi, all in second district of Yalobusha county and State of Mississippi, and more particularly described as follows: Beginning at a point on the east line of said Lot 276, 200 feet from the northeast of T. E. Green lot, which is Lot 276; thence run west to the west line of Lot 276; run thence with the said west line of said Lot 276, 30 feet; run thence east to the point of beginning, being the same property conveyed to Earl Fudge by Mrs. Martha L. Johnson and Wiley Johnson on November 13, 1930, as the same appears of record in Deed Book 'Y' at page 503 of the records of deeds in the Chancery Clerk's office at Water Valley, Mississippi, all lying and being situated in the City of Water Valley, Mississippi."

The second deed of trust describes the property therein as: "All that part of Lot 276 west of the Illinois Cen-

tral Railroad according to the J. W. Mercer may and survey of the City of Water Valley, Mississippi, and all in the City of Water Valley, Mississippi, and in the second district of Yalobusha county, Mississippi, and more particularly described by metes and bounds as follows: Begin at a point on the west side of Main street and on the east side of said Lot No. 276 west, which point is 298 feet north of the southeast corner of said Lot No. 276 west, measured along the east line of the said lot, and run thence north 69 degrees and 45 minutes west to the west line of said Lot No. 276, west, a distance of 64 feet 5 inches, to a point, and run thence easterly parallel to the north line above and in a straight line 72 feet 8 inches to a point on the east line of said Lot No. 276 west, which is 30 feet south of the point of beginning, and run thence northwardly along the east line of said Lot No. 276, 30 feet to the point of beginning.''

It was recited in this deed of trust that it was given to correct an error and to give a more accurate description of land to be conveyed by the deed of trust executed on the 26th day of March, 1931, by Earl Fudge to Ray Sissell, trustee, for the benefit of O. T. Hamner, which deed of trust is of record in the office of the chancery clerk of the second district of Yalobusha county, in book 11, at page 343; and that this deed of trust secured the same debt as is secured by the said deed of trust, which debt is additionally secured by deed of trust given by Earl Fudge to Ray Sissell, trustee, for the benefit of O. T. Hamner, on March 11, 1930, and is of record in the office of the chancery clerk of said district and county in book 11, at pages 281, 282; the lien and security of the said deeds of trust not to be affected in anywise by the giving of this instrument as additional and cumulative security, but to remain in full force and effect.

It appears that after the bank was in receivership, the receiver applied to the chancellor for authority to foreclose a deed of trust given by Earl Fudge to O. T. Hamner, securing the indebtedness mentioned, and that the Chancery Court entered an order directing the trustee to

foreclose on the property described in the petition therefor, it being supposed by the receiver and the chancellor in taking such action, that this was the lot upon which a filling station, known as the Pearce filling station, was located. But through error the 30-foot lot was described in the order of the chancellor, and in the petition to him, and in the foreclosure or trustee's deed; the receiver of the bank bidding for the 30-foot lot the sum of $2,000, in the belief that he was bidding on the filling station lot. The trustee testified that in crying off the property at said sale, after reading of the description thereof, he stated to those present that this was best known as the Pearce filling station property. This 30-foot lot was of little value, estimated at $400 to $750.

After the sale and buying in of the property, which it appears that at the time all parties thought to be the filling station lot, arrangement was made by the receiver of the bank and O. T. Hamner that if the latter would pay the additional sum of $740, to be obtained from the Federal Land Bank upon the property embraced in the deed of trust above mentioned, the 60 acres owned by Hamner, the bank would release Hamner from the indebtedness secured by his deed of trust, and would also release him as endorser on the papers of J. W. Hamner, Jr.; the loan was procured from the Federal Land Bank through the appropriate agency, and the $740 thereby obtained was turned over to the receiver of the bank, who thereupon surrendered to O. T. Hamner his notes and deeds of trust.

In the settlement it was agreed, however, that one, T. O. Gore, who was also an endorser on the J. W. Hamner, Jr., note, would not be affected or released, and that the liability of Earl Fudge on the note held by the bank would not be released, but that the Earl Fudge note was credited with the $2,000 bid at the sale under the deed of trust.

After the foreclosure of the deed of trust, in the negotiations looking to the compromise, O. T. Hamner wrote the receiver of the bank that the bank should obtain at

least $3,000 for the filling station property. O. T. Hamner also admitted on cross-examination, that at the time he was of the opinion that the filling station lot had been sold; but he contends that this belief on the part of the receiver of the bank, and on his part, and on the part of the chancellor in ordering the sale by decree, on petition therefor, and the belief of the trustee, in crying off the property, that he was selling the filling station lot, should not justify reformation of the transaction, for the reason that diligence would have disclosed the error, had the trustee been diligent in looking into the matter, and comparing the description embraced in the proceedings with the real description of the lot on which the filling station was located.

He also argued that Earl Fudge was not shown to have shared in the mistake; that he, being a party to the suit, had a deed of trust on his property involved in this suit, subject to the facts stated and to the right of the bank to resort to the foreclosure on his property, to satisfy the debt due by Hamner to the bank. From a consideration of the entire evidence it appears that the chancellor was warranted in entering the decree which provided that Hamner and Fudge should, within forty-five days, either repay, or pay to the receiver of the bank, the $2,000 bid for the property; or, in default thereof, that the property should be readvertised and resold under the correct and appropriate description. It appears to us that there is not such changed condition in the status of the parties to the suit as would prevent equity from applying the doctrine of mistake to the transaction. Fudge received credit on his debt to the amount of the bid for the lot, and his interest would not be adversely affected by requiring either that he pay this amount, or in default thereof, that the property be readvertised and resold; because he could not equitably retain the credit of $2,000 and still own the filling station lot. And this is also true of O. T. Hamner. The transaction, under the decree, would stand, provided the bank received $2,000, the amount of its bid.

In reference to the diligence feature of the case, the description was by metes and bounds; and it does not appear that at that time there was a record source of surveys which would clearly disclose the real lot. Everybody seems to have regarded the transaction as the sale of the filling station, the value of which induced the bid. It was under lease for a monthly rental of $40; whereas, the lot actually conveyed in the foreclosure sale was unimproved, and seems to have no rental value whatever.

From a consideration of the record, and all the evidence therein, we are constained to confirm the decree of the chancellor.

Affirmed.

**McGowen, J.,** did not participate in the decision of of this case.